Case number 320243 Cindy Morrison-Appley v. Gary Morrison-Appellant. Thank you. Good morning. Good morning. Good morning. Mr. Cantlin, would you like to start? Yes, I would. Thank you, your honor. May it please the court, counsel, my name is Timothy Cantlin and I represent the Appellant defendant in this matter, Gary Morrison. This action arises from plaintiff's desire to act as a co-trustee of the Warren G. Morrison Trust. Warren G. Morrison is the father of both plaintiff and defendant in this matter, and he set up a trust in which he placed one parcel of farmland into this trust for the benefit of his kids. Warren actually had three kids, Roger, Cindy, and Gary. Roger has pre-deceased Warren, and Warren has died as well. And the issue before this court is whether or not plaintiff Cindy Morrison can act as a successor co-trustee of this trust. The answer to that question is no. When we look at the law in connection with the admissions, the exhibits, the affidavits, the depositions on file, the trial court erred when it granted summary judgment in favor of plaintiff and against the defendant. The answer to the question is no, Cindy cannot act as a co-trustee because the trust required her to act, and she did not act in this. And that is evident by both her own testimony and her own actions. The Illinois Trust Code requires her to accept the trusteeship, and by her own testimony and her own actions, she did not accept the trusteeship. The Illinois Trust Code also requires a co-trustee to act, but again, her own testimony and her own actions. What is it that she did not do that your client did? My client, by Cindy's, or the plaintiff's own testimony, the trust was exclusively administered by the defendant from the beginning of this, when it got, when the trust, when Warren died, up through to the beginning of this litigation, it was exclusively performed by the defendant. That's the plaintiff's own testimony. So your client denies that he asked input from her and that she participated in any of the decision making? Correct. The only, there's a couple incidents, instances that the plaintiff points out, and one has to deal with a waterway. And the testimony of my defendant in that case is that he simply called her to advise her that they were doing that. She didn't, and I think the plaintiff's testimony on this is that she didn't give approval or authority. What happened was the defendant simply contacted her to let her know what was going on as a beneficiary of the trust. Okay, go, go on. Okay. So it's her own admissions that she doesn't perform anything that, and it's her own admissions that the necessary and essential tasks to manage it were done exclusively by the defendant. That's her, that's her testimony. And then when we take that in conjunction with her she divested herself of the only trust asset, the land, when she signed a deed in May of 2009 to Gary Morrison as the successor trustee of that trust. And that in turn is a resignation, a failure to act, and her divesting herself of any interest as a co-trustee in this matter. And so when we look at what the court essentially found, the court essentially found that the April 2009 and May 2009 deeds were invalid transfers. The court also found that the plaintiff's cause of actions were not time barred based upon Dick versus the people of Mid-Illinois Corp, and that plaintiff did not waive her right to be a co-trustee or otherwise fail to act as a co-trustee. So when we look at this failure to act, the court was incorrect when it determined that the plaintiff did not fail to act. And the first document I want to point to is the trust document itself. Under 7b of the trust, the very first thing it says is that if the trustee fails to act or is unproper or is unable to properly act, it then within that section goes on to state in the event all three of my children fail to act or unable to properly act, I hereby appoint, and then it goes on to the to appoint more people. The document itself is clear that Warren Morrison wanted a trustee to then when we look at what's required under the law of a trustee, and that's where we look to 701 of the Illinois trust code, which sets forth that if the instrument does not provide a method, and this would be a two, if the instrument does not provide a method, and this particular trust is not providing method of acceptance, the court or the law then sets forth three ways in which a trustee accepts by accepting delivery of the trust property, exercising powers or performing duties as a trustee, or otherwise indicating acceptance of the trusteeship. When we look at the first one, accepting delivery of trust property, plaintiff at no time accepted any trust property. In fact, the plaintiff divest herself of trust property when she signs the sole trustee. If she had failed to sign over that deed, wouldn't that have been a failure to act as a co-trustee? If she had refused to sign over the trust property that she had, if she refused, wouldn't that be a failure to act as a co-trustee? Oh, which deed are you talking about? The May 2090? Right in the beginning, right in the beginning, when there was a discrepancy with some of the land having previously been split off. So why isn't that an act of the trustee as a co-trustee by filling out the necessary paperwork so that that property went back into the trust? Why would her not sign it? Would that be a failure to act? Well, I think if she does other actions in connection with it, then no, it wouldn't be a failure to act. But if she sits by idly and makes no statements or does nothing proactive regarding it, then yes, it is a failure to act. So flipping the logic around, since she did act by putting that property back into the trust, isn't that an action as a co-trustee? I would say that is her action, divesting herself of trust property and an action of her declining her role as a trustee in this matter, because the deed is clear that it's Gary Morrison as the successor trustee, not her. And that's what she wants to get changed. She's essentially trying to undo something that she did 10 years ago. And her actions of signing that deed is a clear act of her divesting herself of her interest as a trustee. You answered my question. Thank you. Okay. And then when we look at the second requirement, exercising powers or performing duties, her own admissions, her own statements are that it was done exclusively by the defendant. And then she did not exercise any trust powers. And then last one, otherwise indicating acceptance of the trusteeship. There was no evidence of any other acceptance by her. In fact, the only evidence that's out there is her divesting herself of this interest. And then you connect that with her failure to act or to do anything, shows that she did not want to act and did not act as a trustee in this matter. Because when we look at 703, co-trustees, what are they supposed to do? A co-trustee must participate. That's what it says under 703, must participate in the performance of the trustee and again, her own testimony says she doesn't do that. So she's not acting as a co-trustee. Go ahead. Was it not the intent of the father as expressed in the trust that the only way that one of the children would lose their interest would be if they died? As a beneficiary, I would agree with that, Your Honor, in that when we talk about them as beneficiaries and what they receive, yes, that would be correct. The land goes to whoever survives, but that isn't in connection with whether or not she can act as a co-trustee. And that's what we're here about today, about whether she can act as a co-trustee, not about what she gets as a beneficiary. But the bottom line of what you're doing is that Mr. Morris, your client, gets the property and she doesn't. Is that not correct? That is not correct, Your Honor. This case has nothing to do with the beneficiaries and what they get under this. Regardless if they are co-trustees or if it's just my client as a trustee, this land goes to the survivor. This case is only about who gets to act as a trustee. It has nothing to do with the residual. Both parties agree that the last of them to survive gets this. How about the income from the property? Could you say that again? I had a hard time understanding that. Yeah, my voice is pretty bad. How about the income from the property? Where does that go now? Let me just make sure I understand your question. Are you asking about the income from the property? Yes. Okay. The income from the property, Gary, over the past 10 years has managed that and at the end of the year, the net income is divided equally to both of them. And after that, after the signing of the deed to himself, who gets the income now? The income right now is being divided equally to Cindy and Gary, both plaintiff and defendant, and that does not change whether Gary is the sole trustee or their co-trustees. Again, this has nothing to do with the beneficiaries of this. Nothing changes with the beneficiaries. This is only who has the right to act as a trustee. Right. So all of those things won't change whether it's just Gary or Cindy and Gary. Then what is this about? It's about who gets to act as the trustee, whether it's just Gary as the sole trustee or whether it is Cindy and Gary as co-trustees. Is there a proposed sale of the land that the kids don't agree on? No, they're not trying to sell it. Neither of them want to sell it. They want to hold on to it and whoever ends up outliving the other ends up with the land. Can you discuss her decision to go straight to the bank with her brother and open up a joint account? Isn't that an act as a co-trustee? I do not believe that that's an act as a co-trustee because of multiple factors. First and foremost, that account with First State Bank under the accounting is an individual account. It is not a trust account. There were a lot of yes. Secondly, that account is not opened up as an account of the Warren G. Morrison Trust. It's opened up and owned by the two of them as I think joint tenants. It's a personal account, not a trust account. Lastly, how was that account treated? How was it treated? Were funds put into that account from the trust? Trust funds were put into that account and then divvied out by gearing. Were there any other personal income individually placed in that account? I have not thoroughly reviewed all of the bank accounts. I don't know whether or not anything went into it or out of it is my understanding that it was so then Gary would then distribute it out. Why shouldn't we look at this as sister thought brother was doing a pretty good job of operating as co-trustee and just didn't interfere? Because that's not what the law allows to have happen. That's why I point you to 703 and they don't. She divested herself of this. She sat back for over 10 years while the defendant exclusively did it and now she wants to come in and start changing everything around. A co-trustee must participate in the performance. She didn't. A trustee must accept the trust property. She didn't. Go ahead. Did he? Did he? Yeah. And by the plaintiff's own admissions, he's the one who did it exclusively over this entire time. Did he accept? Yes. How did he do that? Because he's the one that entered, he's entered into cash rent agreements. He's the one that has accepted the money from the tenant. He's the one that has distributed out all of the money. He has written all of the checks for trust. He's the one that has done exclusively everything for the trust. Okay. I thought you were claiming that there was something specific that she had to do to accept that she did not. Yeah. Under, under the law, she's got to somehow accept and she never does. In fact, she divests herself of the trust property. She deeds it away. Okay. Thank you. If she didn't a legal battle over whether that property should be in the trust or not in the trust by surrendering that voluntarily, isn't that an act as a co-trustee for the benefit and the good of the trust? I think if it's an act, it has to be construed as an act of her divesting her interest in the trust, because if she wanted to maintain and continue to be a co-trustee, she would have had it as Gary and Cindy Morrison as co-trustees of the trust. So she divests herself of that interest. Okay. Mr. Cantlin, your time is up. Are there any other questions for Mr. Cantlin? No. Okay. Mr. Stroh. Thank you, Your Honor. May it please the the system case as noted. Your Honors, this case for us is relatively simple and the circuit court in granting summary judgment for the plaintiff felt the same way about it. Council talks about this, this act and failure to act respectfully. We believe that defendant's position is really a legal conclusion in search of arguments and has been litigation began. What we're talking about with the opening of that account and Justice Wright, you kind of referenced, well, what was this account used as? When was this account opened? My client, the plaintiff lives in Montana, came back after the funeral, went with defendant to attorney Whitmore. And after finding out that they both had been appointed as successor co-trustees, what's the first thing that they did together? They went to the bank and they opened a joint account. And in this account is the only account that ever handled the trust monies from the time that it to my client, transferred all trust monies to a personal USS or USAA account without her knowledge or consent. And that USAA account had personal funds in it in addition to the trust monies and then excluded her from all of their activities. And thereafter refused to allow her to have any input or say over what happened to this property. We do believe that this goes back to the settler's intent, their father in creating this trust. Now I want to, the counsel didn't mention it here, but I want to point out something that was in his reply brief, suggesting there was two different versions of the 2001 original trust. But if you look at the fifth amendment, which is the controlling document here, at that time, the father knew, of course, that his son Roger had pre-deceased both Gary and plaintiff. And in that says the only way that this trust ends is for one of the two siblings, because at this point, these are the only two still living. One of the two siblings passes away or both children, and this is very important, the language in there says both children as co-trustees decide to sell the property. And that language as co-trustees is in there. Their father intended for both of them to be co-trustees. Now counsel wants to suggest going to the bank and setting up this account doesn't count. But for us, that trust account, it's the time-worn phrase of a rose by any other name smells just as sweet. It is, they should have set it up as a trust account, defendant himself said he doesn't know why they didn't. But it was a trust account in the sense that only trust money went in and trust money went out and both were signatories of this account. Plaintiff testified in her discovery deposition that she reviewed all the bank statements. She was very active in doing that and said ultimately that, defendant even testified and he wrote the checks. Plaintiff said it was just easier. They won't live in the same state and there's not that many checks to write. And this was part of the circuit court's point. We're not talking about a huge trust here. We're talking about one plot of land that's on cash rent. There's not necessarily that much that needs to be done. And it kind of confuses things. They have two people writing checks and getting that income in. So as counsel or as Justice Wright had mentioned, she went along with this process and even in defendant's testimony, he said Cindy agreed to that process. And that we think is a delegation of that specific duty of the check writing to defendant. That this is, and the actions you see in this case, is the informal agreement of a brother and sister operating on a small parcel of land and they treat it as such. But at the end of the day, what happens here in 2017, defendant decides to elevate himself above plaintiff. Again, closing this joint account. And there's no evidence that there was ever any disagreement between these two as what should be done. Again, defendant says that this tiling project, he just called and she ended up agreeing to pay out of her pocket for half the tiling project. Defendant in his argument doesn't get to say, well, we just called her up and said, you got to do this. And just all of a sudden, magically half the money appeared. I mean, she had to assent to that. She had to write a check. She had to agree that it was proper to pay for half the tiling project as you would expect a co-trustee to do. So she was participating in the important decisions that had to be made. And again, there wasn't that much to do. That was the point of Judge Holland at the circuit court level. And so in 2017, once everything got transferred out of her name and she was blocked out of even looking at the cash grant lease, that's ultimately what led to this litigation. She is simply trying to return herself to the position that her father intended her to be in by being a co-trustee. And it is defendant who is violating the final wishes of their father that she'd be able to participate. Now, the discussion previously is correct. They're not looking to sell the land right now. Counsel is correct. They are splitting the income. And in a way, it seems silly that you have to argue over control, but it does matter for the plaintiff to act for quiet title, the things that were part of the original complaint in this case. But there could be decisions that would be made by a single trustee without the permission of plaintiff that could have an effect on her. Now, I know counsel's response to that would be, well, then her proper action is to bring a fiduciary breach claim against the defendant as a beneficiary. But why should she have to? Her dad named her as co-trustee. The day she goes and opens the bank account, she's always reviewing the bank statements. She pays for half the time in project. She talks to the cash renter a few times. Again, there's not that much to do. But this only became a problem when defendant elevated himself above plaintiff and said, I don't want you to be trustee. I don't think you accepted this. Then has come up with this argument as argued today. Well, this May 2000, the May the second deed transfer somehow counts as her rescinding her authority to be co-trustee or something. But again, let's look at the purpose of the trust and the language of the trust. The trust only gave a single way that you can divest yourself of being co-trustee. And that is by giving written 30 days notice to the beneficiaries. That was not done here. Defendant admits that. And that is the singular way that once you have acted as trustee, you can resign as trustee. What they are trying to do is shoehorn this May deed into the process here and say that is in effect a resignation. But the trust document controls what is a resignation. She acted. She didn't resign. There has never been a 30 day written notice that she didn't that she intended to resign. And again, this legal action only came about in 2017 once he closed everything and put the money in his own personal account. Plaintiff is not trying to control the show here. She's not trying to be a bad person. She really wants to be on the same level in terms of administration of the small piece of land that her brother is at and which is what their father intended. Now, with these deeds, and again, this goes to the underlying issues with these deeds, because she acted as trustee by opening the account, because Justice McDade, you had asked what did he do that she didn't. Again, there's nothing in this trust document that said she had to go running down the street and shout from the mountaintops, hey, I'm trustee. She opened the account that was there's nothing else that's required. That's her act. And so, you know, once she does that, this April, this original deed in April, only two months after their father had passed, when Gary unilaterally attempts to transfer the property, that is an invalid deed on the face of it. He cannot unilaterally transfer the property because she has accepted her role as co trustee and she is co trustee at the time this transfers. So transferring the property to himself individually. Well, so the first deed attempts to transfer to both of them as joint tenants. And that's why in the second deed, it's a joint tenant individual transfer back into the trust. But the point that we argue and what the circuit court had held is that these are both invalid transfers. Because if defendant did not have the legal right to unilaterally transfer the property to themselves personally, because he didn't have that authority as a single trustee, that makes that deed invalid. So the subsequent deed attempting to undo that wrong is also invalid. They both do not run with the land. And that is part of the issue of why we have this deed confusion and problem on this case. And why this case was brought by trial counsel as an attempt to fix the deeds. Because it's, it's part and parcel of the fact that she should be co trustee, she is co trustee, that these deeds created a confusing mess as to what was going on here. But they're both invalid. So the quick claim deed from sister to brother, if it had simply included two letters co trustee, named him as co trustee instead of trustee, would we be here today? Well, Your Honor, I respectfully, I think so only because that second deed is based on the first one that's still invalid. So no authority was given to them to do that. Now, as a point of fact, as I mentioned in my brief, technically, in her testimony, my client denies that she was in person to sign this may deed to mine. But because she had documents and journals and her testimony showing that she was actually in Montana at the time, there's some confusion there. But our argument is that ultimately, it's not a material fact. counsel in his response brief said, Well, see, this is not summary judgment material, their argument or disputed facts. Well, it's not a material fact. At the end of the day, this April deed is invalid. So this may deed that attempts to undo the April deed is also invalid, and none of these deeds run with the land. And it you know, this case, and I, it's unfortunate that a brother and sister in this situation are here now at the appellate court, arguing not who gets the property, not over the income from from the property, but who gets to manage it. And again, it's the clear intent of the father that they both do it. So all of these arguments to try to come up with, that's why I said it's a conclusion in search of an argument. It's all it doesn't count that she went to the bank, oh, he was the only one that did the checks. Oh, there's this deed transfer that should count as giving up her rights as co trustee or transferring the property, even though the trust only gave one way to back out of your role as trustee. It seems defendant simply doesn't want to have to answer to his sister relative to being co trustee still has the obligation as a beneficiary. But if defendant goes off and does something, if, if this summary judgment does not stand, and defendant goes off and does something. So now we're going to have more litigation of her having to come after the trust and waste trust funds to argue that as a beneficiary that he did something that was hurting the trust. That is absurd in and of itself and a waste of judicial resources, waste of the trust resources. The simplest answer to all of this is that plaintiff and defendant like grown adults and siblings, and this is what their father wanted, get along and manage this small property here in Illinois, figure it out and move on. And that's what should happen. And again, had defendant not elevated himself above plaintiff to justice, right, your point, we would also not be here today. If the status quo had remained, had he just allowed this, he had, in essence, the best of all worlds, in his opinion, he was writing all the checks, he's doing these things, she wasn't getting in his way. What was the problem? Why did he have to unilaterally close the account, put it in his own personal account, then refuse to talk to her and say, you're not co trustee anymore, or you never accepted it. That is the problem. In this case, that is what this case seeks to correct, and simply get us back to the purpose of their father and creating the Fifth Amendment in the trust, and having them both serve as co trustee for this trust in this property. And in conclusion, we therefore think that the circuit court's decision was correct, that there are no material facts and dispute in this case, and that based on the law, public policy, trust law, anything you can imagine, there is zero reason they should not both be co trustees in this case, and that plaintiffs grant of summary judgment by the circuit court judge should be upheld by this court. Thank you. Thank you, Mr. Straub. Mr. Cantlin, any rebuttal? Yes, Your Honor. Certainly, the simple thing could be, we could just say, okay, they got to act as co trustees. But when we look at the facts of this case, what should happen in this case? Because what the law is, a co trustees must act together. When we look at 703, it's clear, a co trustee must participate in the performance of the function. The only way they can get around that is a delegation. And it has to be properly delegated. That's what's in the statute. There is no delegation here. The plaintiff testified there was no agreement between them as to how they were going to operate this. That is in stark contrast to what the law requires. She has to act as a co trustee. She cannot sit idly by and think. There was no delegation. A delegation is an affirmative action saying, I'm delegating these duties to you. That never happened in this case. She sat by and did nothing for 10 years, and now she wants to start running the show. Doesn't the argument work both ways, though? He did nothing to ensure that he was properly delegated. That suggests to me, in all due respect, it suggests to me that they agreed that he would write the checks. There was no need to delegate. They agreed this was the process they wanted to implement. In my response to is that the court, the law requires there to be a delegation. There is no delegation. He is out there doing it. There's no question he's acting as the sole trustee during this entire time. I understand your argument. Okay. And, you know, what led to this litigation is defendant was actually in an accident and was unable to get to the bank. So through his USSA account, he was able to transfer the funds electronically through his computer and then moved it over to the trust account. That's what started it because he was in an accident and was unable to get to the bank. That's what started all this. But when we talk about what the law requires, it requires her to act, requires her to accept. And then there's been a lot of talk about the intent. Well, what was the intent? The intent of the trust is right there. A trustee to act. If someone failed to act, they weren't a trustee. Warren's intent was to have somebody do this. Yes, it was his preference to have his kids do it. But if his kids weren't willing to do it, he was going to have somebody else. The intent is to have somebody act. She didn't do it. We can't just have people sit idly by and say, okay, well, Gary seems to be doing and doing all this fine. And that's okay. The intent was to have somebody act. She didn't act. Then the intent was also only to give her an opportunity to act. And that opportunity only arised if Roger or Gary were to act. And Roger was unable to act. So she had an opportunity. She didn't seize that opportunity. She let that opportunity slip by. And then when we talk about 30-day resignation, while there is no document that says on the top of it, I'm resigning, here's my 30-day resignation in bold print, she signs a deed divesting herself. That in and of itself is a resignation. If not divestment in the clear indication, she's not acting as the co-trustee in this. And again, there's other ways in which she loses her right to act as trustee. She doesn't accept. And she doesn't act. And she signs the deed away. And I do agree with Justice Wright, when she asked counsel the question regarding if Ed had put on their co-trustee of this, would we be here today? My answer to that question is no. Because then we would have a very difficult time proving she was trying to divest herself of this. But she didn't. She is trying to undo an affirmative action she did 10 years ago. And the law doesn't allow it. The law wants co-trustees to participate. And there's nothing in the record to show any type of delegation of her duties to Gary in this. And we can't just allow people to sit back. Delegation is an affirmative action. It was never done. And again, the things that she did do, again, she wrote a personal check. That isn't an action of a trustee. By plaintiff's own admissions, she failed to act. She did not perform any of the powers of a co-trustee. And she divested herself of the trust property. Thank you, Mr. Cantlin. I guess one thing, I got a few seconds. Your time is up. Oh, I'm sorry. I looked at the wrong thing. I'm sorry. Thank you. We thank both of you for your arguments this morning. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will stand in brief recess until 12 o'clock.